## Chicago & Alton R. R. Co. v. Crowder, Administratrix, etc.

1. *Railroads—Proof Required of the Exercise of Due Care.*—As to the character of the proof required, of the exercise of due care on the part of an injured party, the true rule is, that where the circumstances attending an accident are in evidence, the absence of evidence of fault on the part of the injured party will justify an inference and be accepted as proof of the exercise of ordinary care; but where there is an entire absence of evidence of the conduct and acts of the deceased at the time of the accident or injury, that the party acted with due care can not be regarded as proven, because one conjecture is more probable than another.

2. *Railroads—Actions for Injuries—Evidence as Consistent with Carelessness, as with Due Care, etc.*—In an action for damages for the death of a railroad employe, where the evidence is as consistent with carelessness as with the exercise of due care, on the part of the injured person, there is neither proof nor inference to justify a recovery.

**Memorandum.**—Action for damages. Appeal from a judgment for the plaintiff, rendered by the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed June 5, 1893.

The opinion of the court states the case.

C. & A. R. R. Co. v. Crowder.

APPELLANT'S BRIEF, WILLIAMS & CAPEN, ATTORNEYS.

Where a servant, by the exercise of ordinary care and caution, has as good an opportunity as the master of knowing that a location or apparatus is unsafe, he can not recover from an injury received therefrom. Wood on Master and Servant, 698; Honner v. I. C. R. R. Co., 15 Ill. 550.

Where it is impossible to tell from the evidence how an intestate received his injury, how he fell from the cars, what he was doing at the time, and what care, if any, he was using, the plaintiff has not proved any cause of action. Corcoran v. B. & A. Ry. Co., 133 Mass. 507; Riley v. C. R. R. R. Co., 135 Id. 292; B., C. R. & N. Ry. Co. v. Dowell (Iowa,) 15 Am. & Eng. Ry. Cas. 153; Wheelan v. C. M. & St. P. R. R. Co. (Iowa), 52 N. W. Rep. 119; C. & P. R. R. Co. v. State, 73 Md. 74.

There must be proof of the essential facts to fix liability on a party charged with the commission of a wrongful act. Where there is an absence of proof, or where, under the evidence, there is only a probability that an injury may have resulted from the wrongful act of the defendant, the court should take the case from the jury. Cotton v. Wood, 8 C. B. (N. S.) 568, cited in full in Thomp. on Neg. 364; Hughes v. C., N. O. & T. P. R. R. Co. (Ky.), 16 S. W. Rep. 275; Baulec v. R. R. Co., 59 N. Y. 357; B. & O. R. R. Co. v. State, 71 Md. 599; P. R. R. Co. v. Schertle, (Pa.) 2 Am. & Eng. Ry. Cas. 158.

Where the only evidence in a case is circumstantial, the plaintiff can only recover when the circumstances as proved are inconsistent with any other rational conclusion; they must exclude any fair inference or presumption that the accident was caused in any other manner, or by any other means. Wheelan v. C. M. & St. P. R. R. Co. (Iowa), 52 N. W. Rep. 119; Asbach v. C. B. & Q. R. R. Co., 74 Iowa, 248.

APPELLEE'S BRIEF, WELTY, STERLING & McNULTA, ATTORNEYS.

It is culpable negligence for a railroad company to maintain obstructions near its track, dangerous to its employes.

C. B. & Q. R. R. Co. v. Gregory, Admrx., 58 Ill. 272; Chicago & Iowa R. R. Co. v. Russell, Admrx., etc., 91 Ill. 298; Illinois Central R. R. Co. v. Welch, 52 Ill. 183; Johnson, Admr., v. O., I. & W. R. R. Co., 31 Ill. App. Court, 183.

OPINION OF THE COURT, BOGGS, J.

James Crowder, husband of the appellee, administratrix, lost his life on the 19th day of December, 1891. At the time, he was engaged in the service of the appellant company as rear brakeman on a freight train, bound south on its road. The hindmost car of the train was a caboose, having on its top, near its north, or rear end, as the train was moving, a cupola. Within the caboose a ladder extended from the floor to the cupola. Sliding windows on each side of the cupola were so arranged that persons within could pass through them, out upon the roof of the car. When, on the day named, the train was approaching, and within something less than a mile of, Petersburg, the conductor, Mr. Drake, and Crowder, the deceased, were in this cupola.

The conductor informed the deceased that four cars were to be set out of the train at Petersburg, and directed him to attend to the rear end of the train, while he (the conductor) went forward and got out the cars. The conductor then opened one of the windows of the cupola, stepped out upon the top of the caboose, and turning about, told the deceased to go down into the caboose and fasten the latch upon the inside of the door. Crowder immediately descended, and from the floor of the caboose, looked up at the conductor, and said 'all right." He was not heard to speak again, nor seen alive afterward. The conductor went forward over the top of the cars to the front, or head end of the train, and remained there until the station of Petersburg was reached. When the work of setting out the cars began he noticed that Crowder was not at his post, and soon after discovered that he was not upon the train. He walked rapidly back in search of him, and came upon his lifeless body lying upon the ground upon the east side, and within five or six feet of the railroad track. The feet of the dead man extended nearly

to the track; his body at right angles with it.   His head lay partly against the stump of an old piling, which projected ten or twelve inches above the surface of the ground.   The skull was crushed, the stump of the old piling besmeared with blood, and brains and blood were splattered here and there upon the ground about the body, and upon the ballast of the railroad track.   It was evident that the deceased had fallen or been thrown from the train; his head crushed and body mangled by striking the stump of the piling.   It is estimated to be six hundred and twenty feet from the point where the caboose was, when the conductor parted with the deceased, to the place where the body lay.   One hundred and twenty-one feet north of the body, at the side of the railroad track, stood a water tank.   Attached to this tank by a hinge, by the use of which it might be raised or lowered, was a hollow tube, or spout, made of heavy sheet iron, used to conduct water from the tank to the tenders of engines on the road.

The appellee in an action on the case recovered in the Circuit Court a judgment against the appellant company for causing the death of Crowder, upon the theory that this spout had been negligently allowed to hang or swing so low upon its hinge that it would reach and strike a brakeman if he, when passing the tank, should be upon the top of a freight car near the edge of the roof, and that the deceased came out of the cupola window upon the edge of the roof of the caboose, to discharge his duties as rear brakeman, and was struck by the spout, rendered unconscious, and caused to fall to the ground and be killed.   This is an appeal from the judgment so rendered.

The duty of the deceased as rear brakeman required him to be upon the top of the car before the train reached the whistling post for the station at Petersburg.   The information and directions given him by the conductor amounted to an order to discharge this duty.   Hence, it may be conceded that the jury were warranted in believing he made his way from the floor of the caboose, where he was when last seen, through a window of the cupola to the roof of the car, and that he fell or was thrown from the train to the ground.

It is further to be conceded that it sufficiently appears from the evidence, that the spout might have reached and struck a man of his height, had he been standing by the side of the cupola on the roof at the moment the car was passing the tank. Nothing was found upon the roof of the car or upon the cupola indicating that he had been injured there, or even that he had been there. Nor was there mark of blood, indentation or other indication upon or about the spout from which it could be supposed that it had come in contact with his person. A close fitting, knit woolen cap, worn by the deceased, was found upon the ground about half-way between the tank and the body, and on the opposite side of the track. It had neither rim nor visor, fitted the head closely, and was of a kind much worn by brakemen, because it could not be blown off by the wind easily, if at all. The cap was without mark, abrasion, or stain of blood, or anything to induce the belief that it had been removed from the head of the deceased by a blow or stroke of the spout.

On the side of the caboose below and perhaps extending back a little beyond the cupola, several spots, supposed to be blood, were found on the morning following the unfortunate occurrence. These spots were dry and so near the color of the painted side of the car that it was difficult for the witnesses to determine whether they were spots of blood or not. One of the spots was described as being "greasy," and some of the witnesses thought it was composed of brains or flesh and blood. Spots or stains of blood were found upon the rear lower steps of the caboose. Aside from the circumstances recited and the deductions logically arising therefrom, nothing is known of the manner or the cause of the death of Crowder. Perhaps the deductions of counsel for appellee, from these facts and circumstances, may best be made known by a quotation from their brief, viz.: "Crowder was then on the floor of the caboose and, looking at Drake, answered 'all right.' That was the last seen of him alive, and those were the last words he was heard to utter. He followed Drake out of the window to be on top

when the whistle-board was reached, as is required by the rules of the company. Crowder was just in the act of getting out of the window of the cupola or had just got out, and was straightening up, when the cupola came even with the tank. The window is small, about twelve by twenty inches, or fourteen by twenty at most. He was a large man, weighing 180 pounds, and standing five feet nine inches high. His body necessarily extended considerably over the edge of the car. The spout struck him violently upon the head and knocked off his cap, which jostled to the other side of the car and fell about half way between the tank and the place where Crowder's body was found. Crowder evidently had hold of the hand rail on top of the cupola, as this was necessary to enable him to get out and raise himself up on the narrow margin of the roof at the side of the cupola. When the spout hit him he clutched for an instant to the rail until he lost consciousness, or was knocked over on ·the edge of the roof, and his body resting there an instant rolled off and struck the stump of an old piling, 121 feet from the tank, being about the reasonable and natural distance at which you would expect to find the body, taking into consideration the momentum of the body when it left the car. As he fell, or while hanging to the car, the blood which flowed in consequence of the injury from the spout, dropped down and was drawn in by the action of air to the side of the car."

Such may have been the manner of his death, but there is force in the argument of opposing counsel that many of the conclusions arrived at by counsel for appellee rest upon conjecture and speculation as to mere possibilities and probabilities. The spout may have come in contact with the head of the deceased, and have removed his cap and inflicted a wound from which his blood flowed and dropped upon the side of the car, but as counsel for the appellant say, doubts of this nevertheless arise when it is remembered that no mark or stain of blood was upon the roof of the car, the cupola, the cap or the spout of the tank, and impartial minds might accept and adopt as equally probable, the suggestion that the blood (if it was blood) upon the side and steps of

the caboose, was thrown there from the body when it was dashed against the piling. That one of these spots was composed of his flesh or brains is as well shown as that any were of his blood. Is it not as reasonable to believe that this came from the body after it struck the piling where the flesh was mangled, the skull crushed, and the blood and brains of the unfortunate man scattered upon the stump, the ground and the ballast of the track, as to suppose that it came from a wound by a blow of the spout which crushed the skull so that the brain exuded and the blood flowed, and yet left no mark or stain upon the spout, the cap, the roof of the car or cupola? The theory advanced by counsel for the appellee as to the manner of the displacement of the cap and the injury to and fall of the deceased in the view of counsel for the appellant, is a plausible suggestion that his death might have been so caused, and yet it has no established fact in its support to inspire belief of its truth or give it weight above the other suggestions advanced by them, that the cap might have been displaced as the deceased drew his head out of the small window of the cupola, and in endeavoring to catch and retain it, he lost his balance and hold upon the hand rail, the cap escaped and was carried by the wind across the top of the car to the opposite side of the track and to the place where it was found, and the unfortunate man, though struggling to keep his place upon the roof of the car, was unable to do so, and was finally thrown therefrom to the ground and killed, or that he might, though not wounded or in any way injured, have lost his balance while out upon the roof of the car, and in an ineffectual struggle to recover it and avert a fall, displaced the cap from his head. The argument of counsel for the appellee, that it is entirely unreasonable to say that Crowder, an experienced brakeman, in the habit of running on the tops of cars day after day, should, in broad daylight, when the train was running at a steady gait, on a level track, with no snow or ice on the cars, lose his footing or stumble and fall from a car, seems to be answered by the argument that such an explanation of his death is the very first to arise in an impartial mind.

Either one of various suppositions not inconsistent with the facts known would account for his death, but it seems difficult to say that any one of them, more than another, finds lodgment in the mind as a belief created by the process of ascertaining unknown facts from the existence of facts that are known.

However this may be, the evidence is in another respect so clearly insufficient that we are impelled to award a reversal of the judgment.

There is no proof as to the exercise of due care upon the part of the deceased. The late lamented Justice Scholfield, speaking for our Supreme Court as to the requirement of the law in this regard, in the case of the Calumet Iron & Steel Works v. Martin, 115 Ill. 358, said : "From the earliest reported case in our reports where the question was passed upon, to the present time, a period of more than thirty years, the general rule has been declared and recognized in opinions announced from time to time, that in order to recover for injuries for negligence it must be alleged and proved that the party injured was, at the time he was injured, observing due or ordinary care for his own safety."

As to the character of the proof required of the exercise of due care on the part of the party injured we think the true rule is, that when the circumstances attending an accident are in evidence the absence of evidence of fault on the part of the injured party will justify an inference and be accepted as proof of the exercise of ordinary care. But where, as in this case at bar, there is an entire absence of evidence of the conduct and acts of deceased at the time of the accident or injury, that he acted with due care can not be regarded as proven, because one conjecture is more probable than another. Tyndale v. O. C. R. R. Co., 31 N. E. Rep. 131. When the evidence is as consistent with carelessness as with the exercise of due care on the part of the person injured, there is neither proof nor inference to justify a recovery. Shea v. Boston & Maine R. R., 154 Mass. 31.

If there is sufficient evidence in the case at bar to sustain

the theory of the appellee as to the cause of the death of the deceased, out of the same evidence arises, we think, a strong inference of the want of due care on the part of appellee's decedent.

The deceased was an experienced brakeman, and had been performing his duties as such over this line of railroad for seven months. It would be only reasonable to assume that he knew the location of water tanks in use along the line of the road. A rule of the company, a copy of which had been given him and which it was proven he agreed to read and be governed by, advised him of the danger of such tanks to brakemen, and directed that he should, when working near "stock yards, coal schutes and water tanks," use the car ladders on the opposite side of the car from such structures.

One of the essential facts upon which appellee's right of recovery rests is that the deceased came out of the cupola window on the side of the car next to the water tank, and within twelve inches of the edge of the roof of the car, known to him to be a place of danger.

The rule referred to warned him of such danger and directed him how to avoid it in case he needed to reach the top of the car from the ground by way of an outside ladder. He came to the top of this car by an inside ladder, and although he might have stepped out on the roof on the side opposite to the water tank, through a window placed in the west side of the cupola for that purpose, he, of his own accord, if the appellee is right, opened the window nearest the tank and passed through it to the roof, and to a place of peril, against which he had been advised and cautioned.

It can not, therefore, be said that there is an absence of evidence of fault on part of the deceased from which an inference that he was exercising ordinary care might arise, and there being no proof as to his acts and conduct at the time of the accident, that he was acting with due care, can not be regarded as proven.

For this reason a new trial should have been granted.

The judgment must be, and is, reversed, and the cause remanded.